HARCO, INC. OF INDIANAPOLIS, Appellant–Plaintiff/Counterdefendant,

v.

PLAINFIELD INTERSTATE FAMILY DINING ASSOCIATES, Appellee–Defendant/Counterclaimant.

No. 49A02–0101–CV–10.

Court of Appeals of Indiana.

Nov. 5, 2001.

Michael L. Einterz, Indianapolis, IN, Attorney for Appellant.

E. Scott Treadway, David A. Shelton, Lowe Gray Steele & Darko, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff–Counterdefendant Harco, Inc. of Indianapolis ("Harco") appeals the denial of its summary judgment motion, the involuntary dismissal of its claims and the award of attorney fees in favor of Appellee–Defendant–Counterclaimant Plainfield Interstate Family Dining Associates ("Plainfield"). We affirm the denial of summary judgment, the involuntary dismissal of claims, and the decision to award attorney fees. We reverse the order for trebled attorney's fees.

## Issues

Harco presents five issues for review, which we restate as:

I. Whether the trial court properly denied Harco's motion for summary judgment;

II. Whether the trial court properly dismissed Harco's claims against Plainfield;

III. Whether Plainfield established a claim supporting its entitlement to attorney fees;

IV. Whether the trial court erred by awarding attorney fees to Plainfield when the fees were paid by a separate corporate entity; and

V. Whether the trial court erroneously trebled the award of attorney fees.

### Facts and Procedural History

The instant litigation was commenced by Harco, an Indianapolis paving company and sub-contractor, after it paved the parking lot of a Burger King site, but received no payment from either the general contractor, Lane Tuck Construction ("Lane Tuck"), or from Plainfield, the owner of the Burger King. Neither Lane Tuck nor Plainfield complained that Harco's work was incomplete or unsatisfactory. However, Plainfield and Harco intensely disputed whether Harco performed any work at the Burger King site within sixty days of filing a mechanic's lien. Plainfield's amended counterclaim alleges that Harco mistakenly pursued legal action against the owner of another Burger King until the statutory period for filing a mechanic's lien expired and, upon discovery of the mistake, fabricated a timesheet indicating timely performance at the correct Burger King site.

During 1997, Lane Tuck constructed a commercial building designed for the operation of a Burger King restaurant, located at 8570 Northwest Boulevard in Indianapolis, Indiana.[1] The land and building were owned by Plainfield. On April 8, 1997, Harco entered into a subcontract agreement with Lane Tuck, whereby Harco agreed to pave and stripe the parking lot for the contract price (as amended) of $28,682.00. The paving was completed on schedule and, on May 2, 1997, Plainfield opened the Burger King restaurant for business.

Lane Tuck did not pay Harco any of the $28,682.00 contract amount. On June 17, 1997, Harco recorded a mechanic's lien, naming Lane Tuck and MWM Partnership, the owner of a Burger King with an address of 3303 West 86th Street in Indianapolis. On August 27, 1997, Harco commenced an action to foreclose the mechanic's lien. On October 7, 1997, Harco was granted a default judgment. Counsel for MWM Partnership informed Harco's counsel that the lien and default judgment were directed toward a different Burger King than the Burger King where Harco had performed labor. Harco filed a Satisfaction and Release of Judgment on January 29, 1998.

On December 11, 1997, Harco served Plainfield with a Notice of Personal Liability. On December 15, 1997, Harco recorded a mechanic's lien naming Plainfield as the owner of the Northwest Boulevard Burger King. On December 31, 1997, Plainfield's counsel informed Harco that Plainfield was holding $5,369.59 as an outstanding contract sum due Lane Tuck. Additionally, Plainfield disputed the validity of the mechanic's lien by claiming that it was untimely.

---

1. The restaurant is located on the south side of 86th Street in Indianapolis.

On January 13, 1998, Plainfield served upon Harco its "Notice to Mechanic's Lien Claimant to File Suit" pursuant to Indiana Code § 32–8–3–10.[2] On January 28, 1998, Harco commenced a lien foreclosure action against Plainfield. Harco alleged that it had last performed work at the Plainfield Burger King within sixty days of December 15, 1997. Plainfield filed an Answer, a Counterclaim, and a Third–Party Complaint against Paul Harding, the owner of Harco ("Harding").

On September 8, 1998, Harco filed a Motion for Summary Judgment. On March 5, 1999, Plainfield filed a Motion for Leave to File Amended Counterclaim and Third Party Complaint; the motion to amend was granted by the trial court on June 1, 1999. The amended counterclaim and third-party complaint included claims against Harco and Harding for slander of title, abuse of process, pursuit of a frivolous lawsuit and deception. On May 28, 1999, Harco sought leave to file an amended complaint. The motion was granted on June 1, 1999. No answer to the amended complaint was filed.

On July 12, 1999, the trial court denied Harco's Motion for Summary Judgment. A bench trial was conducted on October 3, 4 and 5, 2000. On October 3, at the conclusion of Harco's case-in-chief, the trial court involuntarily dismissed Harco's claims pursuant to Indiana Trial Rule 41. The trial court entered judgment in Plainfield's favor on its counterclaim. Plainfield was awarded attorney fees in the amount of $67,485.87 and an additional amount of $130,971.74, resulting in trebled attorney fees. Harco now appeals.

---

2. Pursuant to Indiana Code section 32–8–3–10, an owner of property upon which a mechanic's lien has been taken may notify, in writing, the holder of the lien to commence suit thereon and if he fails to commence such suit within thirty days after receiving notice, the lien shall be null and void.

## Discussion and Decision

### I. Summary Judgment

#### A. Standard of Review

■ Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. We employ the same standard used by the trial court when reviewing the grant or denial of summary judgment. *Crossno v. State*, 726 N.E.2d 375, 378 (Ind.Ct.App.2000). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.* A party seeking summary judgment bears the burden of showing the absence of a factual issue and his entitlement to judgment as a matter of law. *Colen v. Pride Vending Service*, 654 N.E.2d 1159, 1162 (Ind.Ct.App.1995).

#### B. Analysis

■ During the relevant time period, Indiana Code section 32–8–3–3 provided that a mechanic's lien could be filed within sixty days after the claimant performed labor or furnished materials to benefit the property sought to be liened.[3] The designated materials before the trial court, in support of the motion for summary judgment and in opposition to the motion for

---

3. Currently, Indiana Code section 32–8–3–3 provides that a mechanic's lien may be filed within ninety days after the claimant furnishes labor or materials.

summary judgment, revealed a factual dispute regarding when Harco last performed work at the Burger King site.[4] Accordingly, Harco did not meet its burden of demonstrating the absence of a factual issue. The trial court appropriately denied Harco's motion for summary judgment.

## II. Involuntary Dismissal of Harco's Claims

### A. Standard of Review

Trial was commenced on the contentions contained in Harco's Amended Complaint. At the conclusion of Harco's case-in-chief, the trial court involuntarily dismissed each of Harco's claims. Motions for involuntary dismissal are governed by Indiana Trial Rule 41(B), which provides in pertinent part:

> After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the weight of the evidence and the law there has been shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may

decline to render any judgment until the close of all the evidence.

Pursuant to the foregoing rule, a trial court may weigh the evidence, determine the credibility of witnesses and decide whether the party with the burden of proof has established a right to relief during the case-in-chief. *TMC Transp., Inc. v. Maslanka,* 744 N.E.2d 1052, 1054 (Ind.Ct.App. 2001), *reh. denied.* On review, we will not disturb the trial court's judgment unless it is clearly erroneous. *Id.*

Harco contends that the trial court could not dismiss its claims pursuant to Trial Rule 41(B) because all its allegations were deemed admitted in the absence of Plainfield's response to the Amended Complaint. We disagree. An allegation left uncontested is deemed admitted under Indiana Trial Rule 8(D).[5] *Whisler v. Bank of Henry County,* 554 N.E.2d 17, 20 (Ind. Ct.App.1990). Here, however, the allegations of the Amended Complaint were fully litigated at trial, without objection. This Court will not deem allegations admitted that were vigorously contested without objection at trial. *Id.*

### B. Harco's Personal Liability Claim

Pursuant to Indiana Code section 32–8–3–9, a subcontractor may give written notice to a property owner that the

---

**4.** Harco claims that the trial court should have granted its motion to strike materials designated by Plainfield after November 3, 1998. We disagree. Indiana Trial Rule 56(I) allows a trial court to alter any time limit set forth in Trial Rule 56. The decision to alter a time limit is committed to the sound discretion of the trial court. *Seufert v. RWB Medical Income Properties I Limited Partnership,* 649 N.E.2d 1070, 1072 (Ind.Ct.App.1995). Here, Plainfield sought and was granted a sixty-day enlargement of time to conduct discovery and respond to Harco's summary judgment motion. However; the trial court's order, while purporting to grant the sixty-day extension, referenced the date of November 3,

1998, thirty-four days short of the sixty-day period. After the clerical error was brought to the attention of the trial court, the court further extended the time period for response. Harco has established no abuse of discretion in the trial court's order.

**5.** Indiana Trial Rule 8(D) provides: "Averments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

subcontractor is holding the owner responsible for an amount owed by an employer or lessee to the subcontractor, to the extent that payment is due or may become due from the owner to the employer or lessee. A subcontractor stands in the shoes of the general contractor, and thus does not enjoy rights superior to those of the general contractor. *Blade Corp. v. American Drywall, Inc.*, 400 N.E.2d 1183, 1186 (Ind.Ct.App.1980). Recovery can be had only from funds owed by the owner to a contractor for work done on his property, and if the owner has already paid all of the money due to the general contractor, he cannot be forced to pay a second time to a subcontractor. *Indianapolis Power & Light Co. v. Todd*, 485 N.E.2d 632, 635 (Ind.Ct.App.1985).

█ Harco claims dismissal of its personal liability claim was improper because it presented evidence of its written notification to Plainfield together with counsel's written response that Plainfield was holding $5,369.59 due Lane Tuck.[6] We disagree.

█ Evidence adduced at trial disclosed that Plainfield, upon receipt of the personal liability notice from Harco, calculated that the sum of $5,369.59 was due and owing to Lane Tuck. Although Harco claimed that the $5,369.59 was due in partial satisfaction of Plainfield's contract with Lane Tuck, Plainfield claimed that it had completely paid the construction contract price, but had agreed to reimburse Lane Tuck for "extras" for which Lane Tuck produced a bill after the final construction payment and final lien waiver were completed.[7] Moreover, when Plainfield informed Harco of the balance due,

Plainfield further informed Harco of its intention to offset the balance by Plainfield's claim against Lane Tuck for attorney fees. Finally, prior to the trial between Harco and Plainfield, Plainfield obtained a default judgment against Lane Tuck for attorney fees in excess of $5,369.59. Accordingly, the trial court could properly conclude that Harco failed to establish, by a preponderance of the evidence, that it was entitled to monies held by Plainfield for payment due Lane Tuck under the construction contract.

### C. Harco's Mechanic's Lien Claim

█ Next, Harco challenges the trial court's dismissal of the mechanic's lien claim. In order to establish a mechanic's lien claim, Harco was required to show that it performed work or furnished materials to benefit the subject property within sixty days of filing its lien. IND.CODE § 32–8–3–3. Harco's owner claimed to have restriped the Burger King parking lot during November 1997, while Plainfield's owner claimed that another asphalt contractor restriped the parking lot during October 1997 and that Harco did not perform any work at the site during the requisite statutory period. The trial court was the proper party to weigh the evidence and determine the credibility of witnesses. *TMC Transp., Inc.*, 744 N.E.2d at 1054. We do not replace the trial court's judgment with our own, absent clear error. *Id.* Harco merely requests that we reweigh the evidence and find the testimony of its owner more credible than the testimony of Plainfield's owner. We decline the invitation to do so.

---

6. Although a mechanic's lien must be filed within a specified period of time, there is no such time limitation on the personal responsibility statute. *McCorry v. G. Cowser Const., Inc.*, 644 N.E.2d 550, 551 (Ind.1994).

7. Kevin Haas, a co-owner of Plainfield, testified that Lane Tuck did not obtain any change orders according to the procedure outlined in the construction contract.

### D. Quantum Meruit Claim

Harco also challenges the trial court's dismissal of its quantum meruit, or unjust enrichment claim. To prevail on a claim of unjust enrichment, a plaintiff must establish that it conferred a measurable benefit on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust. *Garage Doors of Indianapolis, Inc. v. Morton*, 682 N.E.2d 1296, 1303 (Ind.Ct. App.1997). Recovery under this theory only requires the plaintiff to establish that the defendant impliedly or expressly requested the benefits be conferred. *Id.* However, without such implied or express request, the defendant is under no obligation to pay for the benefit. *Id.*

Here, there is evidence that Plainfield contracted only with Lane Tuck and fully compensated Lane Tuck according to the contract terms. Plainfield received a final lien waiver from Lane Tuck in exchange for the final contract payment. Moreover, Plainfield co-owner Kevin Haas denied that he customarily dealt with subcontractors or that he ever contacted Harco or requested any service from Harco. There is evidence to support the trial court's determination that Plainfield did not impliedly or expressly request Harco's services. Accordingly, dismissal of the unjust enrichment claim is not clearly erroneous.

### III. Counterclaim for Attorney Fees

Litigants must generally pay their own attorney fees. *Davidson v. Boone County*, 745 N.E.2d 895, 899 (Ind. Ct.App.2001). Accordingly, an award of attorney fees is not allowable in the absence of a statute, agreement or stipulation authorizing such an award. *Id.* In its Amended Counterclaim and Third Party Complaint, Plainfield requested attorney fees pursuant to Indiana Code section 34–52–1–1.[8] Indiana Code section 34–52–1–1 governs the award of attorney fees for litigating in bad faith or for pursuing frivolous, unreasonable or groundless claims. This statute provides in relevant part:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

(c) The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts. However, the prevailing party may not recover the same attorney's fees twice.

A claim or defense is "frivolous" (a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind.

---

**8.** In the Conclusions of Law, the trial court also decreed that Plainfield had established entitlement to attorney fees on alternative bases; specifically, slander of title (Conclusion 22), deception (Conclusion 28), abuse of process (Conclusion 32) and malicious prosecution (Conclusion 37). Nevertheless, the sole damages established were attorney fees and costs. Double recovery of attorney fees is prohibited. IND CODE § 34–52–1–1(c).

Ct.App.1989). A claim is unreasonable if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified. *Id.* at 170–71. A claim or defense is groundless if no facts exist which support the legal claim relied on and presented by the losing party. *Id.* at 171. An award of attorney fees is not justified merely because a party loses on the merits. *Emergency Physicians of Indianapolis v. Pettit,* 718 N.E.2d 753, 757 (Ind.1999).

Plainfield requested that the trial court enter findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. When the trial court has entered findings of fact and conclusions of law upon the request of a party, pursuant to Indiana Trial Rule 52, we apply the following two-tier standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *CSX Transp., Inc. v. Rabold,* 691 N.E.2d 1275, 1277 (Ind.Ct. App.1998), *trans. denied.* The court's findings and conclusions will be set aside only if they are clearly erroneous, that is, that the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind.Ct.App.1996). Special findings, even if erroneous, do not warrant reversal if they amount to mere surplusage and add nothing to the trial court's decision. *Baker v. R. & R. Const., Inc.,* 662 N.E.2d 661, 666 (Ind.Ct.App. 1996).

When we review an award of attorney fees under Indiana Code section 34–52–1–1, we review the trial court's findings of fact under a clearly erroneous standard and review de novo the trial court's legal conclusions. *Davidson,* 745 N.E.2d at 899. Finally, we review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Lafayette Orthopedic Clinic v. Guardianship of Bell,* 670 N.E.2d 956, 957 (Ind.Ct.App. 1996).

The relevant findings of fact and conclusions of law are as follows:

### Findings of Fact

45. Harco recorded a second mechanic's lien on December 15, 1997. The second mechanic's lien was recorded on the Plainfield Burger King ("Plainfield Lien"). Harco only recorded the Plainfield Lien after Harco realized the mistake it had made by improperly recording and foreclosing the Harco MWM Lien. The Plainfield Lien was recorded on December 15, 1997, 222 days after Harco completed its asphalt and striping work at the Plainfield Burger King. The Plainfield Lien was prepared by Einterz. The Plainfield Lien was executed under oath by Harding.

48. When Plainfield learned of the Plainfield Lien, Plainfield through its attorney David Shelton promptly notified Einterz in writing by letter dated December 31, 1997, that the Plainfield Lien was invalid because Harco had not performed work at the Plainfield Burger King for almost eight months, and that

the Plainfield Lien had not been recorded on a timely basis.

50. Rather than voluntarily release the Plainfield Lien, Harco commenced a lien foreclosure action against Plainfield in this Court on January 28, 1998. The Complaint was prepared and signed by Einterz on behalf of Harco (the "Harco Complaint").

51. Harco falsely alleged in the Harco Complaint that Harco had performed work at the Plainfield Burger King within 60 days of December 15, 1997.

58. Harco did not perform work at the Plainfield Burger King on November 7, 1997 or November 8, 1997.

59. Harco last performed work at the Plainfield Burger King on or about May 1, 1997.

60. Harding has offered false testimony in the form of affidavits, depositions and trial testimony in order to support the invalid and false Plainfield Lien.

61. The Plainfield Burger King parking lot stripes were not faded or faint in November, 1997 as claimed by Harding in his deposition and at trial. The Plainfield Burger King parking lot had been re-striped only weeks earlier on October 9, 1997, by Otto's, Inc. Otto's is an asphalt maintenance company, which performs regular parking lot maintenance for Plainfield and J & JK. The parking lot striping would have been in a nearly new condition on November 7, 1997, when Harding claimed the striping was faded and faint. Harding was not aware of this fact when he first offered false testimony in his deposition. Harding only became aware of the work by Otto's when con-

fronted by opposing counsel later in the deposition.

64. The employees of Harco, Hornaday and Garza, could not have been performing restriping work at the Plainfield Burger King on November 7, 1997 from 5:00 A.M. to 6:30 A.M. The daily time records of Harco admitted at trial established that at precisely the same time and later, Hornaday and Garza were approximately 12 miles away working at another unrelated Harco project.

65. Unlike the daily time sheet generated personally by Harding for the Plainfield Burger King, the daily time sheet for the unrelated project which occurred at precisely the same time was completed and signed by Harco's employee Hornaday. Hornaday also completed and signed all other time sheets for November 7, 1997. The only time sheet Hornaday did not sign on November 7, 1997, was the Plainfield Burger King time sheet. Harding admits forging Hornaday's signature on the time sheet.

66. Tucker signed a sworn affidavit in support of Harco's Summary Judgment Motion. The affidavit was prepared by attorney Einterz. Tucker later testified in his deposition that he did not have personal knowledge of many of the facts in the affidavit. *Defendant's Exhibit FF.* Tucker also testified that contrary to his affidavit, he did not supervise or direct the work of Lane Tuck. Tucker testified he had no personal knowledge of Harco performing work at the Plainfield Burger King on November 7 or 8, 1997. Tucker further testified he knew of no reason why Harco

would be performing work in November of 1997 when the project was completed in April of 1997.

77. Harding, Harco and Einterz had actual knowledge that the Plainfield Lien was not valid, when recorded by Harco.

78. Harding, Harco and Einterz had actual knowledge that Harco had no factual basis to file suit to foreclose the Plainfield Lien.

79. Harding knew the Plainfield Lien contained false information when Harding signed the Plainfield Lien.

80. During the course of this Litigation, Plainfield, through its counsel, repeatedly advised Harco and its attorney Einterz, in writing, that the Plainfield Lien was invalid, that Harco's claim was frivolous and that Harco's Complaint should be dismissed. Five letters were mailed to and received by Einterz. *Defendant's Exhibits Z, AA, BB, CC, and DD.* Plainfield also advised Harco and Einterz that Plainfield would be seeking to recover its attorney fees if Harco refused to release the Plainfield Lien, and proceeded with litigation.

82. Plainfield seeks damages against Harco and Harding on the theories of Abuse of Process, Malicious Prosecution, Slander of Title, Frivolous Litigation pursuant to Ind. Code § 34–52–1–1 and Deception, pursuant to Ind.Code § 35–43–5–3. Plainfield also seeks an award of punitive damages.

83. The damages sought by Plainfield include attorney's fees, litigation expenses, court costs, and expert fees.

84. Plainfield incurred attorney's fees of $61,739.52 in defending this Action and prosecuting its Counter-claim and Third Party Complaint. K & JK paid the attorney's fees and related litigation costs on behalf of Plainfield.

87. The Court finds Plainfield incurred the following attorney's fees and expenses:

| | | |
|---|---|---|
| a. | Attorney fees | $61,739.52 |
| b. | Expert fees | $ 1,806.00 |
| c. | Miscellaneous litigation costs | $ 1,940.35 |
| d. | Additional attorney fees in Preparing Post Trial Brief Conclusions and Findings | $ 2,000.00 |

91. The Court finds Plainfield's attorney's fees are reasonable.

### Conclusions of Law

20. The Court enters the following conclusions of law relative to Plainfield's frivolous litigation claim:

a. Harco did not have a legal or factual basis for recording the Plainfield Lien or pursuing its lien foreclosure action.

b. Harco, through its President Harding, knowingly, recklessly and repeatedly offered false testimony in the form of affidavits, depositions, sworn responses to interrogatories, and testimony at trial, in an effort to prove Harco's claim.

c. Harco, Harding and Einterz had actual knowledge that Harco lacked a factual basis to record or foreclose upon a mechanic's lien on the Plainfield Burger King.

d. Plainfield, through its counsel, made repeated written demands that Harco dismiss its claim during the course of this litigation. Harco and its counsel Einterz had a duty to promptly dismiss the lien foreclosure action. Instead, Harco, Harding and Einterz ignored the demands of Plainfield; and

e. Harco's, Harding's and Einterz's conduct violated the spirit and letter of Ind.Code § 34–52–1–1 and Rule 11 of the Indiana Rules of Procedure.

21. Plainfield is entitled to damages in the form of reimbursement of its attorney's fees, litigation costs, expert's fees and costs pursuant to Ind.Code § 34–52–1–1.

(Appellee's Appendix 616–635.)

■■■ The evidence most favorable to the trial court's findings discloses that Harding offered several versions of when and why work was last performed by Harco at the Burger King site. He admitted signing an employee timesheet and proffered no explanation of why that employee was, according to other payroll records, engaged on another project several miles away at the same time. Witnesses whom the trial court found credible testified that they did not contact Harco for restriping work and that another asphalt contractor, Otto's, routinely performed that restriping work. Haas testified that the Burger King parking lot was restriped in the fall of 1997 by Otto's but not by Harco. Exhibits offered into evidence disclosing written communications from Plainfield's counsel to Harco's counsel indicate that the invalidity of Harco's mechanic's lien was repeatedly raised, to no avail. Harco continued to pursue litigation although it lacked credible evidence that it had performed any work within the requisite statutory period for filing a mechanic's lien. Accordingly, there is evidence to support the trial court's findings that Harco knew its claim was invalid. Moreover, the evidence supports the trial court's conclusion of law that Harco pursued a groundless foreclosure claim. Pursuant to Indiana Code section 34–52–1–1(b), Plainfield established the propriety of an award of attorney fees in its favor.

## IV. Payment of Attorney Fees by a Non–Party to the Litigation

■■■ Evidence adduced at trial discloses that K & JK, Plainfield's operating company, is the entity billed by Plainfield's attorneys in regard to the instant litigation. Harco claims that Plainfield cannot recover any attorney fees billed to and paid by K & JK, because K & JK is not a named party in the instant litigation. However, the trial court is not constrained to award attorney fees only when those fees have been directly billed to and paid by a party. *Daurer v. Mallon,* 597 N.E.2d 334, 336 (Ind.Ct.App.1992). Rather, the relevant inquiry is whether a party has *incurred* attorney fees. *Burgett v. Haynes,* 572 N.E.2d 1296, 1298 (Ind.Ct.App.1991). *See also Beeson v. Christian,* 594 N.E.2d 441, 443 (Ind.1992) (stating in relevant part that "public policy [of equal access to courts] would be undermined if we were to hold that a party must be personally obligated to pay attorney fees before the trial court could order the other party to pay those fees"). Accordingly, we find no error in the trial court's decision to assess attorney fees against Harco despite the payer's non-party status.

## V. Trebling of Attorney Fees

■■■ Finally, Harco challenges the trial court's order making Harco liable for treble the amount of attorney fees incurred by Plainfield. The trial court concluded that Plainfield was entitled to an award of punitive damages, but specifically awarded treble attorney fees pursuant to Indiana Code section 34–24–3–1, which provides that a party who suffers a pecuniary loss due to another person's acts of deception may recover treble damages, not to exceed three times the actual damages. The trial court made findings of fact and conclusions of law to the effect that Plain-

field had established a deception claim against Harco pursuant to Indiana Code section 35–43–5–3, which provides in relevant part:

> A person who: . . .
>
> (2) knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity; or
>
> . . .
>
> with intent to defraud, misrepresents the identity of the person or another person or the identity or quality of property . . . commits deception.

Indiana Code section 34–24–3–1 provides in relevant part:

> If a person suffers a pecuniary loss as a result of a violation of IC 35–43, IC 35–42–3–3, IC 35–42–3–4, or IC 35–45–9, the person may bring a civil action against the person who caused the loss for the following:
>
> (1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.
>
> (2) The costs of the action.
>
> (3) A reasonable attorney's fee.

The foregoing section, allowing a plaintiff who has suffered pecuniary loss as a result of offenses against property to sue for treble damages, is penal in nature and must be strictly construed. *Johnson v. Naugle*, 557 N.E.2d 1339, 1344 (Ind.Ct. App.1990). The claimant must prove by a preponderance of the evidence that the defendant committed a criminal act, even though his conviction is not a condition precedent to recovery. *White v. Indiana Realty Associates II*, 555 N.E.2d 454, 456 (Ind.1990). Assuming that Plainfield established a deception claim, we nevertheless disagree that the treble damages statute applicable to crimes against property provides for trebling of attorney fees.

 The interpretation of a statute is a question of law reserved for the courts. *Wayne Metal Products Co., Inc. v. Indiana Dept. of Envtl. Mgmt.*, 721 N.E.2d 316, 317 (Ind.Ct.App.1999), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* The Court's goal in statutory construction is to determine and give effect to statutory intent. *Collier v. Collier*, 702 N.E.2d 351, 354 (Ind.1998). However, it is a rule of statutory construction that the legislature did not intend by statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Chavis v. Patton*, 683 N.E.2d 253, 258 (Ind.Ct.App.1997). As a corollary, we may not read into a statute that which is not the expressed intent of the legislature. *State v. Derossett*, 714 N.E.2d 205, 206 (Ind.Ct.App.1999).

 Although "actual damages" may be trebled pursuant to Indiana Code section 34–24–3–1(1), "costs" and "attorney fees" are designated in separate subsections. Moreover, attorney fees are specifically restricted to that which is "reasonable." We therefore conclude that only actual damages—apart from the separately designated costs and attorney's fees—are susceptible to trebling under Indiana Code section 34–24–3–1. Here, Plainfield established that it had incurred attorney fees as a result of the frivolous claim brought by Harco. However, no actual damages apart from attorney fees and costs of litigation were established. Accordingly, we reverse the portion of the trial court's order that trebles the attorney's fees.

### Conclusion

In light of the foregoing, we affirm the denial of Harco's motion for summary

judgment. We affirm the involuntary dismissal of Harco's claims. We affirm the trial court's decision to award attorney fees to Plainfield, but reverse the order for trebling of attorney's fees.

Affirmed in part; reversed in part.

KIRSCH, J., and BROOK, J., concur.