Argy CHARNAS, Appellant–
Intervenor Defendant,

v.

The ESTATE OF Georgia LOIZOS,
Appellee–Plaintiff.

No. 45A05–0404–CV–190.

Court of Appeals of Indiana.

Jan. 25, 2005.

Paul A. Velligan, Highland, IN, Attorney for Appellant.

Michael C. Dovellos, George C. Paras, Merrillville, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Argy Charnas (Charnas), appeals the trial court's denial to set aside and vacate its Amended Default Order divesting Charnas of her interest in the stock accounts held in joint tenancy with Appellee–Plaintiff, Georgia Loizos, now the Estate of Georgia Loizos (Loizos).

We affirm.

### ISSUES

Charnas raises two issues on appeal, which we restate as follows:

(1) Whether Charnas' procedural due process rights under the Fourteenth Amendment are violated by the trial court's denial to set aside and vacate its Amended Default Order divesting Charnas of her interest in the joint tenancy stock accounts when she was not notified of or granted an opportunity to join in the lawsuit instituted by Loizos against Equiserve Limited Partnership (Equiserve) and Melon Investor Services (Melon); and

(2) Whether the trial court's Amended Default Order is void pursuant to Ind. Trial Rule 60(B)(6) because the trial court failed to establish personal jurisdiction over Charnas.

*FACTS AND PROCEDURAL HISTORY*

Loizos emigrated from Greece and worked continuously in the United States for 43 years. During this time, she purchased AT & T shares through Equiserve and Melon, respectively incorporated in the Commonwealth of Massachusetts and the State of New Jersey. Loizos paid all taxes on the dividends of the stocks, which were claimed and retained solely as her income. After returning to Greece in October of 1980, Loizos' niece, Charnas, an American citizen and resident of Greece, agreed to become Loizos' full-time caregiver and housekeeper. In or around 1997, at the age of 96, Loizos experienced problems carrying out her financial affairs. As a result, she appointed Charnas to act as her representative and guardian to administer her accounts. At the behest of Charnas, Loizos signed an Equiserve and Melon Joint Tenancy Registration Form that effectively turned Loizos' Equiserve and Melon accounts into joint tenancy accounts with Charnas.

Around October of 2000, while attempting to make her last will and testament, Loizos learned, for the first time, that her Equiserve and Melon accounts were held in joint tenancy with Charnas. Loizos immediately contacted Equiserve and Melon to revoke the registration form. The companies refused to change the registration unless both Loizos and Charnas signed a new registration form, which Charnas refused.

On July 23, 2001, Dismosthenis Tripodis (Tripodis), appointed by Power of Attorney by Loizos, filed a Complaint against Equiserve in the Lake Superior Court, requesting to remove Charnas as joint tenant from Loizos' stock accounts. Equiserve failed to respond and on August 21, 2001, the trial court granted a default judgment. Thereafter, on September 18, 2001, Tripodis amended the suit to include Melon. On December 10, 2001, the trial court granted the Amended Motion for Default Judgment and entered its Amended Order, declaring as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that [Loizos'] Amended Motion for Entry of Judgment be and the same is hereby GRANTED, and finding that the AT & T stock ..., S.B.C. Communications, Inc. account[s] ..., Verizon account[s] ..., Lucent Technologies account[s] ..., U.S. West account ..., Avaya, Inc. account ..., Bell South Corporation account ... and Voda Fone Airtouch, Inc., ... are the separate and sole personal property of [Loizos] for the reason that: 1) [Loizos] did not have the donative intent to divest herself of the exclusive dominion and control of said stock accounts to [Charnas]; 2) that [Charnas] did not contribute money to purchase or maintain said stock accounts; and 3) [Loizos] never entered into any contract with [Charnas] or with [Equiserve] and [Melon] under which [Equiserve] and

[Melon] [were] obligated to pay over said stock accounts.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Equiserve] and [Melon] divest [Charnas] of any and all ownership interest in said stocks, by removing said [Charnas] as joint owner from said stock accounts, vest all ownership interest in said stock accounts solely in the name of [Loizos] and all dividend checks issued in the name of [Loizos] and [Charnas] be reissued in the sole name of [Loizos] as her sole property.

(Appellant's App. pp. 9–10).

Immediately after the entry of the trial court's Amended Default Order, and per Loizos' instruction, the stock accounts were liquidated with the proceeds transferred to Greece. However, on December 31, 2001, Charnas instituted a lawsuit at the Court of First Instance, in Greece, alleging as her main claim that, pursuant to active privity of contract, she is entitled to half of the proceeds of Loizos' stock account. On May 21, 2002, the Court of First Instance dismissed Charnas' request for temporary seizure of the funds at issue. Subsequently, Loizos passed away on June 11, 2002, in Ikaria, Greece. Pursuant to her last will and testament nearly all remaining funds in the stock accounts were distributed in Greece.

On March 8, 2002, after instituting her Greek lawsuit, Charnas moved to set aside and vacate the Lake superior court's Amended Default Order of December 10, 2001, to which Loizos filed a Response on May 2, 2002. Thereafter, Charnas filed her Amended Motion to Set Aside and Vacate Judgment and Motion to Intervene under Indiana Trial Rule 24. On June 14, 2002, the trial court granted Charnas' motion to intervene as a party defendant. On March 18, 2003, following Charnas' Answer to Loizos' Response, Loizos filed a two-pronged motion containing: (1) a motion for judgment on the pleadings raising a motion to dismiss based upon *forum non conveniens* and international comity because the matter was tried simultaneously in Greece, and (2) a motion for summary judgment. Consequently, on June 10, 2003, the trial court conducted a hearing on all motions and took the matter under advisement. On July 18, 2003, the trial court notified the parties that it would continue to hold the matter under advisement for another 45 days pending a decision by the Greek court. On July 21, 2003, the Greek Court of First Instance published its Decision 99/2003 concerning all legal matters raised by Charnas. Thereafter, on March 4, 2004, the trial court entered its Order, denying Charnas' motion to set aside and vacate the trial court's Amended Default Order of December 10, 2001.

Charnas now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. Standard of Review

The trial court may relieve a party from a default judgment upon one of the several grounds set forth in Indiana Trial Rule 60(B). *King v. United Leasing, Inc.,* 765 N.E.2d 1287, 1289 (Ind.Ct. App.2002). A trial court's decision as to whether to set aside a default judgment is given substantial deference on appeal. *LaPalme v. Romero,* 621 N.E.2d 1102, 1104 (Ind.1993), *reh'g denied.* Our review of the trial court's refusal to set aside a default judgment is limited to determining whether there has been an abuse of discretion. *LaPalme,* 621 N.E.2d at 1104. Thus, on appeal, the burden is on the appellant to demonstrate that the trial court's decision was clearly against the logic and effect of the facts and circumstances before the court, or that the trial

court misinterpreted the law. *Id.* Although a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation, in Indiana there is a marked judicial deference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. *Standard Lumber Co. of St. John, Inc. v. Josevski,* 706 N.E.2d 1092, 1095 (Ind.Ct.App.1999).

## II. *Procedural Due Process Rights*

■ Charnas first contends that the trial court abused its discretion by refusing to set aside its Amended Default Order of December 10, 2001. Specifically, Charnas alleges that the trial court's order is void pursuant to T.R. 60(B)(6) because the trial court violated Charnas' procedural due process rights under the Fourteenth Amendment by depriving her of her legitimate, protected property interest in Loizos' stock account without giving her notice of the lawsuit and affording her an opportunity to be heard and present evidence. Conversely, Loizos asserts that by executing the joint tenancy registration form, Charnas in effect became one of the principals of the stock account held by Equiserve and Melon. Therefore, Loizos maintains that notice of the lawsuit to Equiserve and Melon constituted good service within the meaning of the Fourteenth Amendment since it was the companies' duty, as Charnas' agents, to notify Charnas of the impending lawsuit.

■ The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law. The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The United States Supreme Court has defined constitutionally protected "property" in this context as "a legitimate claim of entitlement." *Id.* at 577. The source of such entitlements is not to be found in the Constitution however. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Thus, a protected property interest that entitles the owner to due process under the Fourteenth Amendment generally arises from a statute, ordinance, or contract. *See Reed v. Schultz,* 715 N.E.2d 896, 900 (Ind.Ct.App.1999), *trans. denied.*

■ When protected property interests are implicated, the right to some kind of prior hearing is paramount. *Roth,* 408 U.S. at 569–70, 92 S.Ct. 2701. In determining whether due process requirements apply, courts look not to the weight but to the nature of the interest at stake. *Id.* at 571, 92 S.Ct. 2701. To have a property interest in a benefit a person clearly must have more than an abstract need, desire, or unilateral expectation of it, instead, he must have a legitimate claim of entitlement to it. *Id.* at 577, 92 S.Ct. 2701.

We acknowledge that the disputed property interest in the instant case is a jointly held account. In Indiana, the nature of joint accounts is statutorily defined in Ind. Code § 32–17–11. In particular, I.C. § 32–17–11–17(a) stipulates the ownership of joint accounts as "[u]nless there is clear and convincing evidence of a different intent, during the lifetime of the parties, a

joint account belongs to the parties in proportion to the net contributions by each party to the sums on deposit."

Here, the record reveals that the stock account was purchased and expanded during Loizos' forty-three year work period in the United States. No evidence exists that Charnas ever contributed to the growth of this portfolio. Rather, in 1997, after returning to Greece and experiencing problems managing her financial affairs, Loizos merely requested Charnas' help in administering her accounts. To that end, a joint tenancy registration form was signed by both Loizos and Charnas, converting Loizos' accounts into accounts with rights of survivorship jointly held with Charnas. The record is devoid of evidence that Charnas used any of the funds for her own personal needs. The record further shows that even though Charnas had agreed to become Loizos' full-time housekeeper, she never received payment for her services; but, instead expected to receive the stock accounts upon Loizos' death as belated payment for personal services rendered. Only around October of 2000, when Loizos prepared to execute her last will and testament, she discovered that her Equiserve and Melon accounts were effectively held in joint tenancy with Charnas. She immediately took active steps to change the title registration on the accounts.

Thus, based on the facts before us, during her lifetime, Loizos enjoyed full ownership over the joint accounts based upon contributions made solely by her. *See* I.C. § 32–17–11–17(a). Charnas now claims a protected interest in the joint accounts because of Loizos' promise of giving Charnas the accounts upon her death as payment for Charnas' services. Indiana Code section 32–17–11–17(a), which serves as the basis for the establishment of the disputed protected property interest, clearly

incorporates a rebuttable presumption of ownership of the joint account by granting a co-owner of the account an opportunity to present clear and convincing evidence of a different intent. *See Reed*, 715 N.E.2d at 900. Because of this rebuttable presumption, we find that Charnas' interest in the joint account amounts to more than a mere speculation of a possible future benefit and, instead, becomes a protected property interest under the Fourteenth Amendment. *See Roth*, 408 U.S. at 577, 92 S.Ct. 2701.

▪ Nevertheless, even though we conclude that Charnas possesses a protected property interest, we find that she failed to demonstrate that she was prejudiced by the lack of a hearing to establish evidence of Loizos' different intent. *See U.S. Outdoor Adver. Co., Inc. v. Indiana Dept. of Transp.*, 714 N.E.2d 1244, 1261 (Ind.Ct.App.1999) (holding that appellants' Fourteenth Amendment due process claim did not require reversal where they failed to show that they were prejudiced), *trans. denied; see also, Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1169 (Ind.Ct. App.2001), *trans. denied.* The record shows that prior to filing the instant case, Charnas commenced her lawsuit in the Greek Court of First Instance, alleging a right to the proceeds in Loizos' stock accounts. Approximately three months later, she moved to set aside and vacate the Lake superior court's Amended Default Order, based on T.R. 60(B), while claiming, as underlying argument on the merits, that she is entitled to Loizos' stock accounts. The record further reflects that on July 21, 2003, the Greek Court of First Instance, after hearing witnesses and examining documents, issued its decision awarding Charnas a share of the proceeds in Loizos' stock accounts. This decision is currently being appealed. In light of this evidence, we find that Charnas received a full and

fair opportunity to litigate the merits of her claim. Therefore, we conclude that she failed to show prejudice by the lack of a hearing in the Lake Superior Court. Accordingly, we hold that the trial court's decision was not clearly against the logic and effect of the facts and circumstances before the court. *See King,* 765 N.E.2d at 1289.

### III. *Personal Jurisdiction*

 Next, Charnas contends that the trial court abused its discretion in refusing to set aside its Amended Default Order pursuant to T.R. 60(B)(6) because the trial court lacked personal jurisdiction over Charnas. Specifically, she asserts that by virtue of her interest in the stock accounts, she was an indispensable party to the litigation pursuant to T.R. 19 and failure to join her amounted to a void Amended Default Order of December 10, 2001. But even though she is an indispensable party, Charnas continues, she has no minimum contacts with the forum and thus the trial court would have lacked personal jurisdiction over her anyway.

An indispensable party under T.R. 19 is defined as

[a] person who is subject to service of process shall be joined as a party in the action if:

(1) in his absence complete relief cannot be accorded among those already parties; or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest, or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations by reason of his claimed interest.

In the instant case, we find Charnas' characterization of herself as an indispensable party to be unavailing. At most, Charnas might be permitted to join pursuant to T.R. 20.

As we determined above, Charnas is not prevented from disputing whether she should be awarded for her personal services and thus receive part of the accounts. In fact, this is exactly the subject matter of her lawsuit filed in Greece after the trial court's Amended Default Order was entered and Loizos transferred the proceeds of the stock accounts to Greece. Consequently, although Charnas claims to be entitled to the funds in the accounts because of personal services rendered to Loizos, her absence in the instant case does not prevent her from protecting that interest. *See* T.R. 19. Accordingly, we conclude that Charnas is not an indispensable party pursuant to T.R. 19.

### *CONCLUSION*

Based on the foregoing, we find that the trial court did not violate Charnas' due process rights under the Fourteenth Amendment. Furthermore, we hold that Charnas was not an indispensable party under T.R. 19.

Affirmed.

CRONE, J., and VAIDIK, J., concur.