

ATTORNEY FOR APPELLANT

Rudolph Wm. Savich
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

David J. Jurkiewicz
Nathan T. Danielson
Bose McKinney & Evans, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Janet C. Turner (deceased), James R. Turner, and Jan Tee, Inc., <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Nationstar Mortgage, LLC, <br><br> *Appellee-Plaintiff.* | November 30, 2015 <br><br> Court of Appeals Cause No. 53A05-1504-MF-139 <br><br> Appeal from the Monroe Circuit Court <br><br> The Honorable Elizabeth Cure, Special Judge <br><br> Trial Court Cause No. 53C04-1001-MF-13 |

**Barnes, Judge.**

## Case Summary

[1]  Janet Turner, James Turner, and Jan Tee, Inc., (collectively "the Turners") appeal the granting of a motion to enforce the parties' settlement agreement and judgment of foreclosure filed by Nationstar Mortgage, LLC, ("Nationstar"). We affirm.

# Issues

The Turners raise two issues, which we restate as:

> I. whether the trial court properly denied their motion to dismiss; and
>
> II. whether the trial court properly granted Nationstar's motion to enforce the parties' settlement agreement.

# Facts

In 2004, the Turners purchased property in Ellettsville by executing a mortgage and promissory note in favor of Centex Home Equity Company, LLC, which changed its name to Nationstar in 2006. The adjustable rate note was for $267,750.00. In 2008, after interest rates increased, the Turners entered into a loan modification with Nationstar. In 2009, the Turners stopped making payments on the note.

In 2010, Nationstar, in its own name, filed a complaint on the note and to foreclose on the mortgage. On October 9, 2012, the Turners filed an amended counterclaim alleging that Nationstar fraudulently prepared the loan application.

On October 18, 2012, the parties entered into a settlement agreement. In Paragraph 1 of the settlement agreement, the Turners agreed to pay Nationstar $5,000.00 on or before October 25, 2012, and $19,000.00 on or before February 1, 2013. In Paragraph 2 of the agreement, the Turners agreed to execute all reasonable documents necessary for the parties to enter into a mortgage

modification agreement with the principle amount to be financed of $313,000.00, amortized over 253 months at 2% APR, which amounted to monthly payments of $1,517.28 beginning March 2013.

[6] The settlement agreement also called for the parties to execute an Agreed Judgment of Foreclosure in favor of Nationstar in the sum of $345,000.00 minus any payments by the Turners. The agreement specified:

> This Agreed Judgment shall be held by Plaintiff's counsel and shall be filed with the court only in the event Plaintiff [sic] fails to make the cash payments described in Paragraph 1 above within the timeframe set forth therein. In the event said cash payments are made, the Agreed Judgment shall be null and void and of no effect and shall be destroyed by Plaintiff's counsel.

Appellants' App. pp. 106-07. Both parties agreed that, upon the making of cash payments and the execution of the mortgage modification, they would execute mutual releases of claims and file a joint stipulation of dismissal with prejudice.

[7] The Turners made the initial $5,000.00 payment but, despite two extensions of time from Nationstar, were unable to secure financing for the $19,000.00 payment by the end of February 2013. The Turners also failed to execute the Agreed Judgment of Foreclosure as required by the settlement agreement.

[8] In April 2013, Nationstar filed a motion to enforce the settlement agreement alleging that the Turners' failure to make the $19,000.00 payment constituted a material breach of the settlement agreement. In response, the Turners explained that, after entering into the settlement agreement, they had attempted

to obtain the $19,000.00 through a reverse mortgage on another property they owned. Although two applications had been denied, a third application was pending and could close in June 2013. The Turners requested an extension of time to pay the $19,000.00.

[9] The day before a scheduled August 2013 hearing on Nationstar's motion to enforce the settlement agreement, James filed for Chapter 13 bankruptcy in an attempt to force Nationstar to accept the $19,000.00 payment and to modify the loan according to the terms described in the settlement agreement. James filed a plan with the bankruptcy court explaining that he would cure any default on the settlement agreement immediately upon confirmation of the plan.

[10] Nationstar filed a claim in the bankruptcy proceeding. In response to Nationstar's claim, James argued that the 2012 settlement agreement gave the Turners the right to obtain a favorable loan modification. Nationstar argued that the Turners did not satisfy the conditions precedent to the execution of a loan modification as required by the terms of the settlement agreement.

[11] The bankruptcy court agreed with Nationstar and analyzed the settlement agreement as having two tracks: a foreclosure track and a loan modification track. The bankruptcy court explained that the Turners controlled which track was taken by making timely payments or not. The bankruptcy court concluded that the Turners' payment obligations were conditions precedent to the entry of a loan modification agreement and that, because the Turners' chose the foreclosure track by failing to timely make the $19,000.00 payment, Nationstar

was excused from its obligation to modify the terms of the loan. Therefore, the settlement agreement was not an executory contract for purposes of the bankruptcy proceeding.

[12] On May 8, 2014, James moved to dismiss the bankruptcy proceeding, which was granted the next day. James's bankruptcy plan was never confirmed by the bankruptcy court.

[13] From May through July 2014, the parties' attorneys discussed whether it would be possible to modify the loan pursuant to the terms of the settlement agreement. At one point, Nationstar's counsel indicated that Nationstar would be willing to reinstate the modification so long as the Turners made the $19,000.00 down payment and all other payments due since February 2013 by July 31, 2014. On July 30, 2014, Nationstar's attorney forwarded a "payoff quote" and indicated it would send "reinstatement figures" upon confirmation by Nationstar. *Id.* at 180. For whatever reason, the Turners did not make the necessary payments by July 31, 2014, and the loan was not modified.

[14] In September 2014, Nationstar moved to set a hearing on its motion to enforce the settlement agreement. The Turners made several arguments in response and requested that the settlement agreement be declared null and void or that the loan be modified pursuant to the terms of the settlement agreement. A hearing was held on October 16, 2014, and the parties were permitted to file supplemental briefs.

[15]  On November 5, 2014, in response to a request for information, a letter from Nationstar to the Turners indicated that JPMorgan Chase Bank as Trustee for CHEC 2004-C ("Chase") was the owner of the note and that Nationstar was the servicer of the loan. In their December 20, 2014 post-hearing brief, the Turners reiterated their earlier arguments and asked that Nationstar's complaint be dismissed because it was not prosecuted in Chase's name as the real party in interest.

[16]  In January 2015, the trial court granted Nationstar's motion to enforce the settlement agreement and issued a judgment of foreclosure. The trial court concluded that the settlement agreement was clear and unambiguous and that the Turners undisputedly failed to timely make the payments are required by Paragraph 1 of the settlement agreement. The trial court also rejected the Turners' request to set aside the settlement agreement on equitable grounds.

[17]  On February 17, 2015, the Turners[1] filed a "Motion to Dismiss, to Correct Errors, to Vacate Order Dated January 15, 2015 and to Vacate Judgment of Foreclosure entered January 23, 2105." *Id.* at 243. The motion addressed the same issues previously raised by the Turners, and the trial court denied it after a hearing. The Turners now appeal.

---

[1] Janet passed away on January 16, 2015.

# Analysis

## *I. Real Party in Interest*

[18] On December 20, 2014, and again after the final judgment had been issued, the Turners moved for dismissal of the complaint on the grounds that Nationstar was not the real party in interest pursuant to Indiana Trial Rule 17(A). A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted includes the "failure to name the real party in interest under Rule 17." A Trial Rule 12(B)(6) motion to dismiss challenges the legal sufficiency of a complaint. *Meyers v. Meyers*, 861 N.E.2d 704, 705-06 (Ind. 2007). "Our review of a trial court's grant or denial of a motion to dismiss based on Trial Rule 12(B)(6) is de novo." *Allen v. Clarian Health Partners, Inc.*, 980 N.E.2d 306, 308 (Ind. 2012). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. *Id.*

[19] Indiana Trial Rule 17(A) requires that every action be prosecuted in the name of the real party in interest. Trial Rule 17(A)(1) provides:

> An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

The Turners acknowledge that Nationstar sued as the holder of the note but argue that, pursuant to Trial Rule 17(A)(1), Nationstar was required to state its relationship to Chase and the capacity in which it was suing. We disagree.

[20]   Indiana Code Section 26-1-3.1-301 provides:

> "Person entitled to enforce" an instrument means:
>
> (1) the holder of the instrument;
>
> (2) a nonholder in possession of the instrument who has the rights of a holder; or
>
> (3) a person not in possession of the instrument who is entitled to enforce the instrument under IC 26-1-3.1-309 or IC 26-1-3.1-418(d).
>
> A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Pursuant to this statute, although Chase owned the note, Nationstar, as the holder, had the right to enforce the note.[2] This is consistent with the November 5, 2014 notice from Nationstar to the Turners that explained:

---

[2] Indiana Code Section 26-1-1-201(20)(a) defines a "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument." And "bearer" means, in relevant part, "the person . . . in possession of a negotiable instrument . . . payable to bearer or endorsed in blank." I.C. § 26-1-1-201(5)(B). Here, the original note was payable to Nationstar under its prior name, Centex. Upon changing its name, Centex attached an allonge to the note, which was endorsed in blank. The Turners do not suggest on appeal that the endorsed-in-blank

there are some circumstances where the owner has given temporary possession of the loan note to the servicer. The owner does this to ensure that the servicer is able to perform services and duties incident to the servicing of the mortgage loan, such as foreclosure actions, bankruptcy cases and other legal proceedings.

Appellants' App. p. 236.

[21]    Our supreme court has explained that a real party in interest "is the person who is the true owner of the right sought to be enforced. He or she is the person who is entitled to the fruits of the action." *Hammes v. Brumley*, 659 N.E.2d 1021, 1029-30 (Ind. 1995) (citation omitted). Because Nationstar could enforce the note as the holder, Nationstar was entitled to the fruits of the action. As such, Nationstar was a real party in interest.

[22]    Even if Nationstar's status as the holder of the note is not sufficient to make it a real party in interest, we are not persuaded that the Turners were prejudiced by Nationstar's failure to identify Chase as the owner of the note in the complaint. According to the Turners, they would not have agreed to dismiss their counterclaim against Nationstar as part of the 2012 settlement agreement had they known Chase owned the note. They contend they might have been able to

---

allonge rendered the note not payable to Nationstar. Further, at some point after Centex's attachment of the allonge, Nationstar gave possession of the note to Chase, and Chase then hired Nationstar to service the note. But the Turners do not suggest on appeal that Nationstar was not in possession of the note for purposes of its service obligations, which included "payment assistance and modifications, payment posting, validation of the debt, foreclosure proceedings, and payment adjustments." Appellants' App. at 236.

negotiate a modification of the note directly with Chase that allowed them to maintain their counterclaim against Nationstar.

[23] Notwithstanding the obvious weaknesses in the Turners' counterclaim,[3] Nationstar was undisputedly the servicer of the loan at the time of the settlement agreement. As the servicer of the loan, Nationstar was responsible for responding to any concerns about the servicing of the loan, which included payment assistance and modification and foreclosure proceedings. *See* Appellants' App. p. 236. There is nothing in the record to suggest that Chase would have participated in the settlement negotiations, let alone that the Turners would have obtained a better outcome during the negotiations had they known Chase owned the note. Mere speculation by the Turners is not enough to show that Nationstar's failure to name Chase in the complaint affected their substantial rights. *See* T.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). The trial court properly denied the Turners' motion to dismiss.

---

[3] The Turners' counterclaim against Nationstar was based on allegations that it fraudulently prepared the loan application, a document that the Turners signed at the 2004 closing but apparently did not review before signing because of the voluminous closing documents. Even if there was merit to the allegations of fraud, the Turners executed a general release of all claims arising out of the loan as consideration for the 2008 loan modification. To avoid the effects of the general release, the Turners' counterclaim also alleged that the general release should be rescinded because it was procured by fraud and duress.

## II. Enforceability of the Settlement Agreement

[24] Generally, Indiana strongly favors settlement agreements. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). If a party agrees to settle a pending action, but then refuses to consummate the agreement, the opposing party may obtain a judgment enforcing the agreement. *Id.* "Settlement agreements are governed by the same general principles of contract law as any other agreement." *Id.* "The construction of a contract is particularly well-suited for de novo appellate review, because it generally presents questions purely of law." *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-78 (Ind. 2013).

### A. Abandonment

[25] The Turners argue Nationstar abandoned the settlement agreement by claiming that the Turners owed the original loan amount, as opposed to the amount specified in the settlement agreement, in the bankruptcy proceeding and in various other communications with the Turners after the bankruptcy was dismissed. We have previously observed that the abandonment of a contract is a matter of intention to be ascertained from the facts and circumstances surrounding the transaction. *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 652 (Ind. Ct. App. 2012). "Abandonment may be inferred from the conduct of the parties, and a contract will be treated as abandoned when one party acts inconsistently with the existence of the contract, and the other party acquiesces." *Id.* "Abandonment of a contract is a mixed question of law and

fact; that is, what constitutes abandonment is a question of law and whether there has been abandonment is a question of fact." *Id.*

[26] The trial court rejected the Turners claim of abandonment, observing:

> The Turners cannot ask this Court to set aside the agreement due to Nationstar's inconsistent actions given the many questionable actions the Turners have taken in this case. The clean-hands doctrine of equity prevents the Turners from complaining about these contradictory actions and further persuades the Court that Nationstar's actions in asking for larger amounts than agreed to should not prevent the foreclosure from proceeding.

Appellants' App. p. 25.

[27] Indeed, the record shows that the Turners repeatedly delayed Nationstar's efforts to enforce the foreclosure provisions of the settlement agreement. Specifically, in April 2013, Nationstar moved to enforce the settlement agreement after the Turners failed to timely make the $19,000.00 payment despite two extensions from Nationstar. The day before the scheduled hearing, in an attempt to force Nationstar to modify the loan, James filed for bankruptcy. After receiving an unfavorable ruling from the bankruptcy court, James withdrew the bankruptcy petition. Negotiations between counsel followed, but the Turners again failed to make regular mortgage payments or the $19,000.00 payment called for by the terms of the settlement agreement. In September 2014, Nationstar renewed its efforts to enforce the settlement agreement and, as of November 2014, the Turners were approximately sixty-

two payments behind.[4] Under these facts, we cannot say that Nationstar, by indicating in certain letters and documents that the Turners owed the full loan amount, abandoned its right to pursue foreclosure pursuant to the terms of the settlement agreement.

## B. Accord and Satisfaction

[28] Beginning in September 2013, while the bankruptcy was pending, James made six monthly payments to Nationstar in the amount specified by the settlement agreement. With the first payment, James included a letter to Nationstar stating that the payment was enclosed "pursuant to the terms of my proposed Chapter 13 plan. Please do not cash this check unless you accept the terms of the plan." *Id.* at 172. The back of the check provided, "Endorsement constitutes acceptance of Chapter 13 plan." *Id.* at 173. Nationstar cashed this check.

[29] The Turners contend that, by cashing the check, Nationstar was bound to allow the Turners to cure their $19,000.00 default and to enter into a loan modification pursuant to the terms of the settlement agreement. "Under Indiana Trial Rule 8(C), accord and satisfaction is an affirmative defense which must be specifically pleaded and proven by the party raising it." *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). Assuming the issue of

---

[4] It is not clear if this number reflects six payments made by James beginning in September 2013. Regardless, the Turners' arrearage was significant.

accord and satisfaction was properly pled in the Turners' October 9, 2014 response to Nationstar's motion to enforce the settlement agreement, the Turners had the burden of proving accord and satisfaction.[5]

[30] "The term 'accord' denotes an express contract between two parties by means of which the parties agree to settle some dispute on terms other than those originally contemplated, and the term 'satisfaction' denotes performance of the contract." *Id.* "As a contract, accord and satisfaction requires a meeting of the minds or evidence that the parties intended to agree to an accord and satisfaction." *Id.* In Indiana, "a check tendered in satisfaction of a claim must be accompanied by an express condition that the acceptance is in full satisfaction of the claim and that the creditor takes the check subject to that condition." *Id.* at 1283.

[31] Here, James did not offer the September 2013 payment of $1,517.28 as satisfaction of the Turners' entire outstanding debt to Nationstar. Instead, James attempted to bind Nationstar to the terms of his proposed bankruptcy plan. Although Nationstar cashed James's check, there is no evidence that by doing so Nationstar was aware of, let alone intended to be bound by, the proposed bankruptcy plan, which had not been approved by the bankruptcy court. Without more, the Turners have not established that, by cashing the check, Nationstar intended to accept the terms of the proposed bankruptcy

---

[5] The Turners claim of accord and satisfaction is based entirely on common law.

plan. Under these facts, the Turners did not prove the affirmative defense of accord and satisfaction.

### C. Promissory Estoppel

[32] Finally, the Turners claim that Nationstar is estopped from seeking foreclosure because they detrimentally relied on Nationstar's assertions that, if the Turners made the $19,000.00 payment and all other past due payments, Nationstar would modify the loan. After the bankruptcy proceeding was dismissed, counsel for the Turners and Nationstar discussed the possibility of belatedly proceeding under the terms of the settlement agreement. And, at one point, Nationstar's counsel indicated that Nationstar would be willing to reinstate the modification so long as the Turners made the $19,000.00 payment and all other payments due since February 2013 by July 31, 2014. On July 30, 2014, Nationstar's attorney forwarded a "payoff quote" and indicated it would send "reinstatement figures" upon confirmation by Nationstar. *Id.* at 180. Although it is not clear why, the belated payments were never made to Nationstar, and the loan was not modified.

[33] The Turners claim that, on July 31, 2014, based on Nationstar's assurances that the loan could be modified, they agreed to dismiss a separate lawsuit against another lender related to the Turners' inability to timely obtain a reverse mortgage. According to the Turners, on August 20, 2014 a motion to dismiss the other lawsuit was filed and, on August 27, 2014, the lawsuit was dismissed with prejudice.

[34] Promissory estoppel encompasses the following elements: (1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). Here, the deadline for the Turners to make the belated payments to Nationstar was July 31, 2014, and the Turners agreed to the dismissal of their other lawsuit that same day, without having made the necessary payments to Nationstar. Because the payment deadline was looming and the Turners had not made any payments for whatever reason, it was not reasonable for the Turners to rely on Nationstar's statements about modification as a basis for agreeing to the dismissal of their other lawsuit. *See Little v. Progressive Ins.*, 783 N.E.2d 307, 315 (Ind. Ct. App. 2003) (observing in the context of equitable estoppel that, where two parties stand on equal mental footing without a fiduciary relationship, "we will not protect a person who failed to exercise common sense and judgment."), *trans. denied*. The Turners have not established that promissory estoppel is a basis for prohibiting the foreclosure according to the terms of the settlement agreement.

## Conclusion

[35] The Turners have not established that the trial court erroneously denied their motion to dismiss or that the parties' settlement agreement should not be enforced as it relates to the forfeiture. We affirm.

[36] Affirmed.

Kirsch, J., and Najam, J., concur.