## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 04 2018, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Fred L. Cline
Oliver & Cline, LLP
Danville, Indiana

ATTORNEY FOR APPELLEE

Mark R. Waterfill
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John H. Battershell and Helen A. Battershell,

*Appellants-Defendants/Counter-Plaintiffs,*

v.

Stuart C. Surface,

*Appellee-Plaintiff/Counter-Defendant.*

October 4, 2018

Court of Appeals Case No. 32A01-1708-CC-1989

Appeal from the Hendricks Superior Court

The Honorable Mark A. Smith, Judge

Trial Court Cause No. 32D04-1312-CC-1270

**Mathias, Judge.**

[1] Stuart Surface ("Surface") filed a complaint in Hendricks Superior Court against John and Helen Battershell (collectively "the Battershells") alleging that the Battershells breached their lease agreement with Surface. The Battershells

counterclaimed and alleged that Surface breached the lease agreement. The trial court initially granted summary judgment to the Battershells but later set aside its judgment. After a bench trial, the court determined that the Battershells breached the lease agreement. However, the court concluded that Surface failed to prove damages, and therefore, entered a zero-damage award but ordered the Battershells to pay Surface's attorney fees in the amount of $37,312.22.

[2] The Battershells appeal and raise several issues, which we restate as:

I. Whether the trial court abused its discretion when it set aside its order entering summary judgment in the Battershells' favor;
II. Whether the trial court erred when it concluded that Surface did not breach the lease agreement;
III. Whether the trial court erred when it concluded that the Battershells converted Surface's personal property; and,
IV. Whether the trial court erred when it awarded attorney fees to Surface.

Surface cross-appeals and raises two arguments, which we restate as:

I. Whether the trial court erred when it concluded that Surface failed to prove damages for the converted personal property; and,
II. Whether the trial court abused its discretion when it awarded Surface less than the amount he requested in attorney fees.

[3] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[4] The Battershells own commercial real estate located at 258 Meadow Drive in Danville, Indiana. Surface, who is a real estate agent and a member and

manager of a property renovation company, began renting commercial property from the Battershells in 2008. In 2013, Surface wanted to increase the size of his office space. Therefore, the parties agreed to lease terms for the larger Meadow Drive property.

[5] Surface requested certain improvements and modifications to his new office space. The parties agreed that the Battershells would initially pay for the improvements, but that total cost of improvements would be amortized over the life of the ten-year lease. Surface agreed to pay rent in the amount of $1,310.56 per month.

[6] In May 2013, the parties executed the lease agreement. The lease agreement provided that Surface was required to purchase liability and casualty insurance naming both parties as the insureds. Surface gave the Battershells a copy of the required certificate of insurance. However, the Battershells were not named as insureds. In August 2013, the Battershells sent Surface a letter asking him to provide a certificate of insurance naming them as insureds as required by the lease agreement. But the letter did not specifically declare that Surface had breached the lease agreement.

[7] Also, on December 13, 2013, Surface attempted to pay his rent due on December 15, but the Battershells' office was locked. Therefore, the Battershells did not receive the lease payment until December 16, 2013. The lease agreement provided that if Surface failed to pay rent for ten days after its due date, the Battershells had the right to re-enter the premises and take possession.

[8] The Battershells assumed that Surface intended to vacate the property because certain furniture was missing. Surface had moved certain property and furniture that was previously affixed to the premises[1] to another location. Surface never informed the Battershells that he intended to move out of the property.

[9] On December 16, 2013, one day after his rent was due and without notifying Surface, the Battershells changed the locks on the Meadow Drive property. Therefore, Surface was unable to access his personal property located on the premises and was deprived of use of the premises.

[10] On December 18, 2013, Surface sent a letter to the Battershells stating that the Battershells had breached the lease agreement by denying him access to the leased property. Surface also requested the return of certain personal property left on the premises. Surface received some, but not all, of the personal property that was stored in his office. The property that was not returned to him were items of sentimental value that belonged to his deceased mother.

[11] On December 27, 2013, Surface filed a complaint against the Battershells alleging breach of contract and asserting claims for replevin and conversion. The Battershells counterclaimed also arguing breach of contract, theft and conversion.

---

[1] Surface purchased and paid for the assembly and installation of office furniture and storage units.

[12]     In December 2014, after Surface's attorney withdrew and Surface failed to respond to certain discovery requests, including requests for admissions, the Battershells moved for summary judgment. Surface failed to respond to the motion, and the trial court granted summary judgment to the Battershells on January 30, 2015.

[13]     On April 24, 2015, Surface filed a motion for relief from judgment and a motion to withdraw deemed admissions. A hearing was held on the motions, and on August 14, 2015, the trial court set aside the summary judgment order and the deemed admissions.[2]

[14]     A bench trial was held on May 16, 2017. And on June 20, 2017, the trial court issued findings of fact and conclusions of law. In pertinent part, the trial court concluded that

> 2. The Lease between Surface and [Battershell] is not ambiguous. Under the unambiguous language of the Lease, Battershell was required to notify Surface of any alleged breach and to allow Surface to correct the breach in twenty (20) days.
>
> 3. At the time that Battershell changed the locks and locked Surface out of the Leased Premises, Battershell breached the Lease and violated Indiana law.

---

[2] The Battershells filed a motion requesting the trial court certify its order granting Surface's Trial Rule 60(B) motion for interlocutory appeal. The trial court denied the Battershells' motion. Appellants' App. p. 8.

4. Battershell committed an act of conversion of Surface's personal items in violation of Ind. Code § 35-43-4-3(a).

Appellants' App. p. 19.

[15] However, the trial court also found that Surface failed to prove the value of the converted personal items. Consequently, he was "not entitled to recover any damages for the converted property not returned." *Id*. Yet, the trial court also concluded that Surface was entitled to attorney fees pursuant to Indiana Code section 34-24-3-1 in the amount of $37,312.22. This amount is significantly less than the $97,912.47 in fees that Surface requested.

[16] The Battershells appeal the trial court's order setting aside the summary judgment entered in their favor and the trial court's judgment in favor of Surface. Surface cross-appeals arguing that he should have been awarded damages for the sentimental value of his personal property.

## Standard of Review

[17] At the conclusion of the bench trial, the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52.

> The findings or judgment are not to be set aside unless clearly erroneous, and we give due regard to the trial court's ability to assess the credibility of witnesses. On review, we first consider whether the evidence supports the factual findings and then consider whether the findings support the judgment. Further, "while we defer substantially to findings of fact, we do not do so to conclusions of law."

*WindGate Properties, LLC v. Sanders*, 93 N.E.3d 809, 813 (Ind. Ct. App. 2018) (quoting *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000)).

## I. The Trial Court's Order Setting Aside Summary Judgment

[18] The trial court initially entered summary judgment in favor of the Battershells after Surface failed to respond to the motion. Approximately three months later, Surface filed a motion for relief from judgment pursuant to Trial Rule 60(B)(1) and (8), which provides in pertinent part:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> (1) mistake, surprise, or excusable neglect;
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

A movant alleging mistake, surprise, or excusable neglect "must allege a meritorious claim or defense." T.R. 60(B).

[19] The trial court concluded that Surface met his burden of proving that he was entitled to relief under Trial Rule 60(B). *See id*. The Battershells appeal and argue that the trial court abused its discretion when it granted relief to Surface because they presented evidence that Surface was aware of filings in the case and that he understood that a response to their summary judgment motion was required.

[20] Relief under Trial Rule 60(B) is "an equitable remedy within the trial court's discretion," and we "review a trial court's Rule 60 ruling only for abuse of discretion." *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013). "The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case[.]" *Huntington Nat'l Bank v. Car-X Assoc. Corp.*, 39 N.E.3d 652, 655 (Ind. 2015) (citation omitted). And when we review a trial court's decision to grant or deny a Trial Rule 60 (B) motion, we do not reweigh the evidence or substitute our judgment for that of the trial court. *Id*.

[21] Default judgment "plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation[.]" *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005). However, "in Indiana there is a marked judicial deference for deciding disputes on their merits and for giving parties their day in court[.]" *Id*. And any doubt as to the propriety of a default judgment must be resolved in favor of the defaulted party. *Allstate Ins. Co. v. Watson*, 747 N.E.2d 545, 547 (Ind. 2001).

[22] There is no general rule as to what constitutes excusable neglect under Trial Rule 60(B). *Seleme v. JP Morgan Chase Bank*, 982 N.E.2d 299, 310 (Ind. Ct. App. 2012) (citing *Kmart v. Englebright*, 719 N.E.2d 1249, 1254 (Ind. Ct. App. 1999), *trans. denied*), *trans. denied*. Each case must be determined on its particular facts. *Id*. Sickness of a party has been held to constitute excusable neglect. *Id*. (quoting *Kmart*, 719 N.E.2d at 1254).

[23]     Here, Surface's counsel withdrew from the case in May 2014. Surface does not dispute that he received notice of pleadings and discovery requests that the Battershells filed while he was unrepresented by counsel. The Battershells filed their motion for summary judgment on December 23, 2014. Approximately two weeks later, Surface sent an email to the Battershells' attorney that stated, "I have retained a law firm to represent me in the Battershell matter. They will make their appearance this week." Appellants' App. p. 128. An attorney did not file an appearance for Surface before the response to the motion for summary judgment was due.

[24]     One week before the summary judgment response was due, Surface was admitted to Fairbanks Hospital for inpatient drug treatment. Shortly thereafter, he was transferred to an intensive inpatient residential facility in Florida. In addition to his drug addiction, Surface argues he was entitled to relief from judgment because he was suffering from "compromised higher cerebral functioning of a moderate to severe degree" which impaired his general cognitive abilities. *Id.* at 136. Surface submitted to the trial court a report from Dr. Donald Layton, a licensed psychologist and neuropsychologist, who evaluated Surface and concluded that "current impairments reflect a clear decline in this patient's higher cognitive functioning from some previous, probably average level given his level of education." *Id.* Dr. Layton also concluded that given the "nature and significance of [Surface's] impairments, he will require assistance with his medications, financial affairs and nutritional needs." *Id.*

The trial court was presented with evidence that Surface's severe drug addiction and neurological and psychological impairments prevented him from actively participating in the proceedings. Moreover, Surface had not abandoned the litigation but had twice communicated with the Battershells' attorney during the months he was unrepresented by counsel. Finally, Surface presented evidence a meritorious claim and defense as required by Trial Rule 60B(B).[3] For these reasons, and given the unique facts of this case, we conclude that the trial court acted within its considerable discretion when it granted Surface's Trial Rule 60(B) motion for relief from judgment.

## II. Breach of the Lease Agreement

The Battershells also dispute the trial court's interpretation of the lease and its conclusion that Surface did not breach the parties' lease agreement. A lease is construed in the same manner as any other contract. *Stout v. Kokomo Manor Apts.*, 677 N.E.2d 1060, 1064 (Ind. Ct. App. 1997). The construction of the

[3] The Battershells argue that Surface should not have been permitted to present any evidence of a meritorious defense because Surface failed to respond to its motion for summary judgment and a trial court may not consider any response filed outside the thirty-day time limit established in Trial Rule 56. The Battershells cite to *Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967 (Ind. 2014) in support of their argument. In that case, the court addressed a conflict between Trial Rules 54(B) and 56(C) and held that a trial court cannot consider summary judgment filings of a party after the thirty-day deadline in Rule 56(C). *Id.* at 973. However, in that same case, the supreme court explained that the Appellees were not precluded from seeking Trial Rule 60(B) relief from the trial court's order granting partial summary judgment to the Appellant. *Id.* at 974. We cannot conceive of any reason our supreme court would expressly state that a party may file a Trial Rule 60(B) motion requesting relief from an order granting summary judgment if a party would not also be permitted to present evidence of a meritorious defense. *But see Welton v. Midland Funding, LLC*, 17 N.E.3d 353 (Ind. Ct. App. 2014).

terms of a written contract is a pure question of law, which we review *de novo*.

*Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008).

> When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. First, we must determine whether the language of the contract is ambiguous. The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder. . . . We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict.

*Whitaker v. Brunner*, 814 N.E.2d 288, 293–94 (Ind. Ct. App. 2004), *trans. denied*

(citations and quotation marks omitted).

[27]    The lease agreement contained the following provision:

> Tenant will purchase and maintain, at its own expense, public liability and casualty insurance naming Landlord and Tenant as insureds and insuring against liability for injuries to persons and property occurring on the real estate or within the Leased Premises, all with limits of liability coverage in an amount not less than $1,000,000.00. Tenant further agrees to purchase and maintain, at its own expense, content insurance, protecting Tenant's personal property located within the demised premises. Tenant will furnish Landlord with certificates of such coverage within ten (10) days of commencement of this Lease.

Appellants' App. p. 35. The lease agreement also provided that if Surface breached the lease agreement and the default was not cured "within twenty (20) days after written notice of such breach, it shall be lawful for Landlord . . . to re-enter into and upon said Leased Premises . . . and repossess the same and institute legal proceedings for any rent that may be due thereon." *Id*. at 37.

[28] The trial court found that under the unambiguous terms of the lease agreement, the Battershells were required to notify Surface of any alleged breach and allow him to correct the breach in twenty days. *Id.* at 19. The court then simply concluded that the Battershells were "entitled to nothing by way of its counterclaim." *Id.*

[29] Surface obtained liability insurance and forwarded a copy of the liability insurance to the Battershells as specified in the lease agreement. However, the insured was listed as Surface & Young LLC,[4] and the Battershells were not named as additional insureds. Therefore, in August 2013, the Battershells sent Surface a letter asking him to "provide the required Insurance Certificate or provide some sort of explanation of how you intend to resolve this matter." *Id.* at 96.

---

[4] The Battershells also argue that naming "Surface and Young LLC" as the insured breached the lease agreement because the agreement was executed between Surface, individually, and the Battershells. But Surface was a manager and member of that company. In any event, that Surface and Young LLC was listed as the insured is not outcome determinative of the issues presented in this appeal.

The letter did not explicitly state that Surface had breached the lease agreement. However, the letter did explain that the certificate of insurance provided by Surface did not comply with paragraph nine of the parties' agreement. Yet, the Battershells did not demand any specific action within 20 days but only requested the required insurance certificate or an explanation of how Surface intended to resolve the matter.

Moreover, the Battershells took no other action on Surface's failure to name the Battershells as insureds on the liability policy. And the Battershells continued to collect Surface's rent payments and allowed him to remain in possession of the premises. By failing to demand that Surface produce the required insurance certificate within twenty days and by allowing Surface to remain in possession of the premises, the Battershells essentially waived that provision of the contract and acquiesced to Surface's breach. *White River Conserv. Dist. v. Commonwealth Engineers, Inc.*, 575 N.E.2d 1011, 1016 (Ind. Ct. App. 1991) (stating "strict performance of the terms of a contract on the part of one party may be waived by the other"), *trans. denied*; *see also Turner v. Nationstar Mortg., LLC*, 45 N.E.3d 1257, 1263–64 (Ind. Ct. App. 2015) ("Abandonment may be inferred from the conduct of the parties, and a contract will be treated as abandoned when one party acts inconsistently with the existence of the contract, and the other party acquiesces.").

### III. Conversion

Next, the Battershells argue that the trial court erred when it concluded that they were liable for conversion. A person who knowingly or intentionally exerts

unauthorized control over property of another person commits criminal conversion. Ind. Code § 35-43-4-3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Indiana Code section 35-43-4-1(a) provides that to "exert control over property" means "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." A person's control over property of another person is "unauthorized" if it is exerted without the other person's consent, in a manner or to an extent other than that to which the other person has consented, or by promising performance that the person knows will not be performed. *See* Ind. Code § 35-43-4-1-(b)(1), -(2), and -(6).

[33] Pursuant to Indiana Code section 34-24-3-1, a person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss. *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008), *trans. denied*. If the person who suffered the pecuniary loss proves the elements of criminal conversion by a preponderance of the evidence, he or she can recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees. *Id.* at 596 n.4, 597.

[34] The trial court found that after the Battershells locked Surface out of the premises, Surface did not have access to his personal property at the leased premises.

25. On December 18, 2013, Surface's counsel sent a letter to Battershell asserting that Battershell was in material breach of the Lease and demanded that Surface be allowed to return to the Leased Premises and to retrieve his personal property.

26. Surface made a request for the return of all of his remaining personal property, including construction materials, a nine-millimeter pistol, an Xbox gaming system, a Rolex Submariner watch, a number of his deceased mother's personal affects, and items he purchased to give his family as Christmas gifts.

27. Ultimately, at a meeting with Battershell and counsel, some construction materials and a nine-millimeter pistol were returned to Surface. However, the rest of Surface's personal property, including personal items from his deceased mother, was not returned.

Appellants' App. p. 18. The trial court found that the Battershells committed conversion by failing to return all of Surface's personal property.

[35] The Battershells locked Surface out of the leased premises without notice and without giving him an opportunity to remove his personal property. Surface prepared an itemization of the property left in the leased premises, which was admitted at trial as Exhibit 11. Certain items on the list were eventually returned to Surface, but other items were not. Tr. p. 37.

[36] The only testimony to support the trial court's conclusion that Surface owned the property in question and that it was located in the leased premises was Surface's own testimony. Surface did not produce receipts or other documentation establishing ownership of personal property. But as the finder of fact, the trial court chose to credit Surface's testimony concerning his property that was never returned. Surface's testimony is sufficient to prove by a

preponderance of the evidence that the Battershells converted Surface's property.

## IV. Zero-Damage Award

[37] In his cross-appeal, Surface argues that the trial court erred when it awarded him zero damages. The trial court declined to award damages because Surface "failed to prove the value of his damages as to the converted property." Appellants' App. p. 19.

> He testified that the value of his deceased mother's property was sentimental. Surface did not submit any receipts or other satisfactory evidence of the value of the remaining items of personal property identified in his Exhibit 11. Therefore, he is not entitled to recover any damages for the converted property not returned.

*Id.*

[38] Surface argues that he was entitled to a damage award based on the sentimental value of his converted property. Surface cites to two cases in support of his argument that "a damage award may be based upon" sentimental value. Appellee's Br. at 23.

[39] In *Campins v. Capels*, 461 N.E.2d 712 (Ind. Ct. App. 1984), three national racing championship rings were stolen and eventually destroyed. Capels sued the gold dealer who purchased the stolen rings and melted them down. Capels testified to the significant meaning and sentimental value of the rings at trial. He also testified that rings were custom made and submitted evidence of the price of

gold on the date the rings were stolen. Capels estimated that he would have never sold the rings but that their worth was between $700 to $1,000, "finally settling on $750 when asked to be specific." *Id.* at 716.

[40] The trial court valued the rings at $1,000 each. On appeal, Campins, the gold dealer, argued that the damage award was excessive and Capels's damages should be restricted to the price of gold or replacement value of the rings. Our court observed that considering sentimental value of an item to determine damages can be appropriate "in limited circumstances." *Id.* at 721.

> When we refer to sentimental value, we do not mean mawkishly emotional or unreasonable attachments to personal property. Rather, we are referring to the feelings generated by items of almost purely sentimental value, such as heirlooms, family papers and photographs, handicrafts, and trophies. What we are referring to basically are those items generally capable of generating sentimental feelings, not just emotions peculiar to the owner. In other words, any owner of these USAC rings would have similar feelings. The most apt analogy to our situation is that of the trophies. In two cases, courts have awarded damages based on the consideration of the "blood, sweat and tears" expended to win these objects. We see no difference in giving special consideration to items such as these and to the three USAC rings, awarded for three years of "blood, sweat and tears" and thus having special sentimental meaning for Capels.

*Id.* (citations omitted).

[41] Our court therefore concluded that it was appropriate for the trial court to award damages in excess of the replacement value of the rings because of the unique circumstances and "special attachment to this property." *Id.* at 722.

However, our court concluded that awarding more than $750 per ring was excessive. Specifically, the court explained:

> we can hardly deem it appropriate to fix a value higher than that asserted by the owner. Capels finally settled upon a figure of $750 per ring; the court's award of $1000 apiece could only have been improperly based on speculation. To decide otherwise would be to open a Pandora's box of problems in the computation and proof of actual value. By our decision here, we simply conclude that certain property, by its very nature, has an element of sentiment essential to its existence. In this case, we refer to symbols for achievements of national stature and recognition and the calculation of their actual value. But we must also add the proviso that even for significant awards or mementos we do not intend to permit fanciful speculation as to their worth. We must fashion our remedy within the realm of sensibility, as here, where $750 is only slightly above the established range of replacement values. Such would naturally also be our standard in valuating similar significant awards, such as an Oscar, the Heisman Trophy, or an Olympic medal, where the recipient retains the honor despite the loss of the trophy, such trophy being merely the symbol of the achievement and perhaps replaceable by a surrogate. A certain amount of sentiment is inherent in the value of these objects to the owner, and each case must be based on its own facts. But we must refrain from considering all but reasonable estimates of that element of sentiment. We believe in this case, Capels's $750 figure was just such a reasonable value of each ring with the sentiment included therein.

*Id.* at 722–23.

[42] Surface also relies on *Mitchell v. Mitchell*, 685 N.E.2d 1083 (Ind. Ct. App. 1997), *trans. granted*, 695 N.E.2d 920, *summarily aff'd in relevant part*. In *Mitchell*, the decedent's daughter, Pam, and his second wife, Flossie, were engaged in a long-

standing and bitter dispute over pictures, home movies, and the decedent's personal effects. The parties eventually entered into an agreement concerning disposition of the property, but Flossie failed to turn over certain property to Pam as agreed. Therefore, Pam sued for specific performance under their contract.

[43] At trial, Pam testified that the items were important to her and were of great sentimental value, but "expressed difficulty in placing a dollar figure on items with little market value[.]" *Id.* at 1086. She eventually testified that her damages for her time, travel, expenses for trying to retrieve the items, and her emotional suffering was between $35,000 and $50,000. *Id.* She also testified that the value of the items she had never received was between $77,000 and $100,000. *Id.* The trial court ordered Flossie to produce the items Pam had not received under the terms of the agreement and pay Pam "$35,000.00 as damages for the wilful three[-]year delay in complying with the agreement." *Id.*

[44] On appeal, Flossie argued that the $35,000 damage award was speculative and unsupported by independent evidence of Pam's damages. Citing *Campins*, our court observed that

> "in establishing proof of loss, the complainant is less compelled to provide certainty in the *amount* of loss as he is to provide certainty in the actual *fact* of loss." "In addition, no mathematical exactitude is required in assessing damages, and all uncertainties are resolved in favor of the complainant and against the wrongdoer." There was ample evidence before the trial court to provide certainty as to the proof of loss and prove that the delay was caused by the intentional actions of Flossie. Though we

recognize that placing a dollar value on items of purely sentimental value is a difficult and abstract business, we believe that *Campins* provides sufficient guidance in the determination of damages.

*Id*. at 1088–89 (citing *Campins*, 461 N.E.2d at 722) (emphasis in original). Our court affirmed the $35,000 damage award after noting it was supported by the trial court's findings and was the lowest estimate requested by Pam.

In this case, Surface testified that the property was "not worth a whole lot of monetary value." Tr. p. 38. And the only value of the property was sentimental value. *Id.* at 38, 54–55. Surface was specifically asked what value he would place on the property, and he stated, "there's no value that . . . you could put [on] these items" and "[i]f you gave me three hundred thousand dollars ($300,000) I wouldn't take that for 'em (sic), . . . there's just no value." *Id.* at 38.

Unlike the cases Surface relies on, here there is no testimony or evidence from which the trial court could appropriately fashion a damage award. The *Campins* court specifically cautioned against engaging in "fanciful speculation" to determine a damage award where personal property has unique sentimental value attached. 461 N.E.2d at 722. Surface failed to provide any evidence concerning value of the converted personal property, and therefore, we affirm the trial court's zero-damage award.

## V.  Attorney Fees

Finally, Battershells argue that Surface's failure to prove monetary damages precludes an award of attorney fees. Under the Crime Victim's Relief Act, a

person who suffers a pecuniary loss as a result of conversion may recover reasonable attorney fees from the person who caused the loss. Ind. Code § 34-24-3-1. The statute is penal in nature and must be strictly construed. *Coleman v. Coleman*, 949 N.E.2d 860, 869 (Ind. Ct. App. 2011).

[48] In *Coleman*, our court held that "if a plaintiff suffers no pecuniary loss as the result of a defendant's actions, the plaintiff is not entitled to recover attorney fees under the Crime Victim's Relief Act. *Id.* (citing *Bridgeforth v. Thornton*, 847 N.E.2d 1015, 1028 (Ind. Ct. App. 2006)).

> The statute explicitly refers to "pecuniary loss" as the necessary prerequisite for an award of attorney fees. It does not state that any "victim" of one of the enumerated crimes is entitled to attorney fees. If the legislature had intended the statute to have that broad of an application, it could have worded the statute differently.

*Id.* The jury found in favor of the plaintiff on the theft count but also found that she suffered no damages as a result of the theft. Therefore, our court concluded that the plaintiff was not entitled to an award of attorney fees. *Id.* at 870.

[49] In its separate order awarding attorney fees, the trial court found that Surface "suffered a pecuniary loss as a result of" the Battershells' conduct and was entitled to an award of attorney fees pursuant to Indiana Code section 34-24-3-1. Appellants' App. p. 21. The trial court concluded that Surface's "pecuniary loss consisted of many items of personal property that were identified as having sentimental value, and other property that while [Surface] failed to establish a

value for purposes of an award of damages, still were converted nonetheless."
*Id*. at 22.

[50] Black's Law Dictionary defines the term "pecuniary" as "of or relating to money; monetary." *Black's Law Dictionary* 1152 (7th ed. 1999). And a pecuniary loss is defined as "a loss of money or of something having monetary value." *Id*. at 957. Similarly, the Oxford English Dictionary defines pecuniary as "consisting of money; exacting in money." *New Shorter Oxford English Dictionary* 2136 (4th ed. 1993).

[51] Surface testified that the property the Battershells converted had little to no value and the only value was sentimental. Tr. p. 38. A sentimental loss with no monetary value is not a pecuniary loss. For this reason, we conclude that the trial court erred when it awarded attorney fees to Surface.[5] *See Coleman*, 949 N.E.2d at 870. We therefore reverse the attorney fee award and remand for proceedings consistent with this opinion.

## Conclusion

[52] The trial court acted within its discretion when it set aside the summary judgment entered in the Battershells' favor. The court's findings that the Battershells breached the lease and converted Surface's property are supported

---

[5] Therefore, we need not address Surface's claim in his cross-appeal that the trial court should have awarded him additional attorney fees.

by the evidence. We also affirm the trial court's zero-damage award, but as a result, must reverse the trial court's decision to award Surface attorney fees.

[53] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Riley, J., and May, J., concur.